UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION

FRED NEKOUEE, individually,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiff,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
vs.　　　　　　　　　　　　　　　　　　　　　　: Case No. 4:18-cv-00674
　　　　　　　　　　　　　　　　　　　　　　　　:
ESA P PORTFOLIO L.L.C., a Delaware limited :
liability company　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendant.　　　　　　　　　　:
_____/

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, ESA P PORTFOLIO L.L.C., a Delaware limited liability company (sometimes referred to as "Defendant"), for Injunctive Relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.　　　　Plaintiff, Fred Nekouee, is an individual who resides in Tampa, Florida, in the County of Hillsborough.

2.　　　　Defendant's property, Extended Stay America, is located at 11827 Lackland Road, St. Louis, Missouri 63146, in the County of St. Louis.

3.　　　　Venue is properly located in the Eastern District of Missouri because venue lies in the judicial district of the situs of the property.　The Defendant's property is located in and does business within this judicial district.

4.　　　　Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

6.      When surfaces are not nearly flat, Plaintiff's mobility is limited in his wheelchair.

7.      The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

8.      Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of tipping the Plaintiff over sideways in his wheelchair.

9.      On his visit to the Extended Stay America, the Plaintiff encountered excessively steep running and cross slopes in the parking lot and access aisles.

10.    Mr. Nekouee travels to the St. Louis area every three to six months to accompany his brother to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.

11.    Fred Nekouee has stayed at the property which forms the basis of this lawsuit in March 2018, and he plans to return to the St. Louis area and the property in July 2018 to avail himself of the goods and services offered to the public at the property since it is close to the heavy equipment dealerships he visits.   He also visited the St. Louis area in December 2017.

12.    The Plaintiff likes staying at moderately priced hotels like Extended Stay America, and having a kitchen area in the room is desirable since he likes to buy, store and eat some of his

own groceries on his trips.

13.    The Plaintiff has encountered architectural barriers at the subject property.  The barriers to access that the Plaintiff encountered at the property have endangered his safety in his wheelchair, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, have impaired his use of the restroom in the accessible guestroom, and have impaired his ability to reach or access fixtures and amenities at the Extended Stay America.

14.    The Plaintiff is deterred from visiting the Extended Stay America, even though he likes staying at such moderately priced hotels, because of the difficulties he will experience there until the property is made accessible to him in his wheelchair.

15.    Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant is responsible for complying with the obligations of the ADA.  The place of public accommodation that the Defendant owns, operates, leases or leases to is known as Extended Stay America located at 11827 Lackland Road, St. Louis, Missouri 63146   ("Extended Stay America").

16.    Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 18 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.  Fred Nekouee desires to visit the Extended Stay America not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

17.    The Defendant has discriminated against the individual Plaintiff Fred Nekouee by

denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

18.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   Preliminary inspections of the Extended Stay America have shown that violations exist. The violations that Fred Nekouee personally encountered or observed on his stay at the Extended Stay America include, but are not limited to:

**PARKING**

a.   In the parking lot of the Extended Stay America, some of the parking spaces for disabled patrons do not have the signage and international symbol of accessibility required by Federal Law 2010 ADAAG §§ 502.6 and 703.7.2.1.

b.   In the parking lot of the Extended Stay America, there are no parking spaces for disabled patrons with van accessible signage as required by Federal Law 2010 ADAAG §§ 208.2.4 and 502.6.

c.   In the parking lot of the Extended Stay America, the parking space for disabled patrons has an excessively steep cross slope, as steep as 1:32.3 (3.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

d.   In the parking lot for the Extended Stay America, the change in elevation from the access aisle to the ramp is approximately 1 inch, which change in elevation is greater than the maximum allowed change in elevation of 0.5 inches, and water also accumulates in this area, in violation of Federal Law 2010 ADAAG §§ 502.4, 303.3 and 405.10.

e.  In the parking lot of the Extended Stay America, the running slope of the access aisle serving the disabled parking spaces is 1:27 (3.7%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

f.  In the parking lot of the Extended Stay America, the cross slope of the access aisle serving the disabled parking spaces is 1:28.6 (3.5%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

g.  In the parking lot of the Extended Stay America, the cross slope of the access aisle serving the disabled parking spaces is 1:22.7 (4.4%), which cross slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

h.  In the parking lot of the Extended Stay America, the cross slope of the access aisle serving the disabled parking spaces is 1:31.3 (3.2%), which cross slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

i.  In the parking lot of the Extended Stay America, the running slope of the accessibility ramp is 1:7.3 (13.7%), which running slope is dangerously steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010 ADAAG § 405.2.

j.  In the parking lot of the Extended Stay America, the running slope of the accessibility ramp depicted in the picture below is 1:6.8 (14.7%), which running slope is dangerously steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010 ADAAG § 405.2.



k.  In the parking lot of the Extended Stay America, the running slope of another accessibility ramp depicted in the picture below is 1:6.3 (15.9%), which running slope is dangerously steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010 ADAAG § 405.2.



l.   In the parking lot of the Extended Stay America, the running slope of another accessibility ramp near the corner of the building depicted in the picture below is 1:6.2 (16.1%), which running slope is dangerously steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010 ADAAG § 405.2.



m.  The slope of the accessibility curb ramp sides or the curb ramp flares depicted in the photograph below is 1:2.6 (38.9%), which slope is dangerously steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010 ADAAG § 406.3.



n.  The slope of the accessibility curb ramp sides or the curb ramp flares depicted in the picture below is 1:1.7 (59.3%), which slope is dangerously greater than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010 ADAAG § 406.3.



**LOBBY ENTRANCE DOOR**

o.  The force needed to open the lobby door is 10.5 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

**INTERIOR LOBBY AREA**

p.  In the lobby, the snack vending machine card reader is 56 inches above the finish floor, which level is higher than the maximum allowed height of 48 inches above the finish floor when the reach depth is less than 20 inches, in violation of Federal Law 2010 ADAAG § 308.2.2.

q.  In the lobby, the soda vending machine card reader is 52 inches above the finish

floor, which level is higher than the maximum allowed height of 48 inches above the finish floor when the reach depth is less than 20 inches, in violation of Federal Law 2010 ADAAG § 308.2.2.

**ACCESSIBLE GUESTROOM, ROOM 103**

r.   The door force needed to open the accessible guestroom (room 103) door is 8.5 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

s.   The lavatory sink in the accessible guestroom has a knee clearance width underneath the sink of only 24 inches, which width is less than the minimum required width of 30 inches (760 mm), in violation of Federal Law 2010 ADAAG § 306.2.5.

t.   The lavatory sink in the accessible guestroom does not have the clear floor space or ground space (space underneath also blocked by trash bin), knee and toe clearance required by Federal Law 2010 ADAAG § 305 and 306.2.3.

u.   The pipes under the lavatory sink in the accessible guestroom are not insulated as required by Federal Law 2010 ADAAG §§ 606.3 and 606.5.

v.   The refrigerator door handle in the accessible guestroom required tight grasping and excessive force to open in violation of Federal Law 2010 ADAAG § 309.4.

w.   The clear floor or ground space between objects, the bed and chair, in the accessible guestroom is 19 inches and less than the required minimum of 30 inches, in violation of Federal Law 2010 ADAAG § 305.

x.   The door handles of the kitchen cabinets in the accessible guestroom are at 51 inches above the finish floor and higher than the maximum allowed height of 48 inches

above the finish floor, in violation of Federal Law 2010 ADAAG § 603.4

y.   The hood keys in the accessible guestroom are 54 inches above the finish floor and higher than the maximum reach height above the finish floor of 48 inches, in violation of Federal Law 2010 ADAAG § 308.2.

z.   The iron holder in the accessible guestroom is at 62 inches above the finish floor and higher than the maximum allowed reach height of 48 inches above the finish floor, in violation of Federal Law 2010 ADAAG § 308.2.

aa.   Outside of the accessible guest restroom, the bottom edge of the mirror's reflecting surface is 40 inches above the finish floor, which height is higher than the maximum allowed height of 35 inches above the finish floor, for mirrors not located above a lavatory or countertop, to permit an individual in a wheelchair to use the mirror, in violation of Federal Law 2010 ADAAG § 603.3.

bb.   Clear floor or ground space of 30 inches by 48 inches to reach the air conditioning thermostat in the accessible guestroom is not provided, which clear floor space is necessary for an individual in a wheelchair to reach the thermostat, in violation of Federal Law 2010 ADAAG § 305.3.

cc.   The clear floor or ground space between the bed and the wall in the accessible guestroom is only 18 inches and less than the required minimum of 30 inches, in violation of Federal Law 2010 ADAAG § 305.

**ACCESSIBLE GUEST RESTROOM**

dd.   The accessible guest restroom door push side maneuvering clearance in a front approach beyond the latch and parallel to the doorway for a door with a latch is only 4 inches, which clearance is less than the minimum required clearance of 12 inches, in

violation of Federal Law 2010 ADAAG § 404.2.4.

ee.   The accessible guest restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is 6 inches, which clearance is less than the minimum required clearance of 18 inches, in violation of Federal Law 2010 ADAAG § 404.2.4.

ff.   The accessible guest restroom roll-in type shower clearance width is 33.5 inches and less than the required minimum inside clearance of 36 inches (1525 mm), in violation of Federal Law 2010 ADAAG § 608.2.3.

gg.   The slope of the floor or ground surface of the shower pan in the accessible guest restroom is 1:16.1 (6.2%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 304.2.

hh.   The seat in the accessible guest restroom, roll-in shower compartment, is not a folding type, in violation of Federal Law 2010 ADAAG § 610.3.

ii.   The seat provided in the accessible guest restroom standard roll-in shower compartment, is not installed on the side wall adjacent to the controls, in violation of Federal Law 2010 ADAAG § 610.3.

jj.   The rear wall grab bar in the accessible guest restroom only extends 16 inches and 20 inches from the centerline of the water closet and does not extend the minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side, in violation of Federal Law 2010 ADAAG § 604.5.2.

kk.   The accessible guest restroom lavatory sink does not have the clear floor or ground space (space underneath is blocked by a trash bin), and the knee and toe clearance required by Federal Law 2010 ADAAG §§ 305 and 306.2.3.

13

ll.     In the accessible guest restroom, the lavatory pipes under the sink are not insulated as required by Federal Law 2010 ADAAG §§ 606.3 and 606.5.

mm.     In the accessible guest restroom, the leading edge of the towel rack protrudes 9 inches horizontally from the wall, and more than the maximum horizontal protrusion of 4 inches (100 mm) for an object with a leading edge between 27 inches (685 mm) and 80 inches (2030 mm) above the finish floor, which protrusion also blocks access to the rear grab bar, in violation of Federal Law 2010 ADAAG § 307.2.

nn.     The toilet paper dispenser in the accessible guest restroom is outside the reach range of an individual in wheelchair, which dispenser centerline is 14 inches from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches in front of the water closet, in violation of Federal Law 2010 ADAAG § 604.7.

oo.     In the accessible guest restroom, the bottom edge of the mirror's reflecting surface is 45 inches above the finish floor, which height is higher than the maximum allowed height of 40 inches above the finish floor, for mirrors located above a lavatory, to permit an individual in a wheelchair to use the mirror, in violation of Federal Law 2010 ADAAG § 603.3.

19.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

20.     The discriminatory violations described in paragraph 18 are not an exclusive list of the Defendant's ADA violations.  Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.  The individual Plaintiff, and all other individuals

14

similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

21.     Defendant has discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.   Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

22.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

23.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR

36.505.

24.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

25.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

26.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the Extended Stay America and adjacent parking lot area and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.     The Court issue a Declaratory Judgment that determines that at the

commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*

17